IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY CHICKIS, JR., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 24-673 |
| DARYL L. CAMPBELL; CANONSBURG-HOUSTON JOINT SEWER AUTHORITY, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This case arises out of a truck/motorcycle accident originally filed in the Court of Common Pleas of Washington County, Pennsylvania ("state court"), then removed to federal court because Plaintiff Jeffrey Chickis, Jr., contends that Defendants' conduct violated his substantive due process rights under the United States Constitution. Presently before the Court are Motions to Dismiss the Complaint filed on behalf of Defendants Canonsburg-Houston Joint Sewer Authority (the "Sewer Authority") (Docket No. 8) and its foreman Daryl L. Campbell (Docket No. 11). The motions are thoroughly briefed (Docket Nos. 9, 12-16, 21, 22) and are ripe for decision. For the reasons set forth herein, the motions to dismiss the federal § 1983 claims will be granted and the case will be remanded to the state court.

**I.   BACKGROUND**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts, as alleged in the Complaint and in the light most favorable to Mr. Chickis as the Plaintiff, that are relevant to the federal claims presently before the Court.

Campbell is a foreman employed by the Sewer Authority, a political subdivision of the Commonwealth of Pennsylvania. For the purpose of this opinion, the Court will assume that both Campbell and the Sewer Authority were state actors. *Swift v. McKeesport Hous. Auth.*, 726 F. Supp. 2d 559, 571 (W.D. Pa. 2010) ("Municipalities and other local government units [are] to be included among those persons to whom § 1983 applies.") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

On March 13, 2024, Chickis was lawfully operating his motorcycle on Morganza Road, near the intersection of Curry Hill Road. Complaint ¶ 8. Campbell was driving a truck owned by the Sewer Authority and was making an illegal left turn onto Curry Hill Road despite the presence of a "no left turn" sign when Chickis and Campbell violently collided. Complaint ¶¶ 7, 9, 11, 13, 15. Chickis suffered catastrophic and life-altering injuries. Complaint ¶ 11. Campbell's illegal left turn was not a one-time act of negligence. Complaint ¶ 12. The Sewer Authority owns the portion of Curry Hollow Road onto which Campbell made the illegal left turn. Complaint ¶ 13. There is a "no trespassing" sign and the only individuals authorized to enter are Sewer Authority employees. Complaint ¶ 14. Moreover, the Sewer Authority had a "long-established policy or custom of directing or permitting its employees to make the illegal left turn" onto Curry Hollow Road. "[T]his policy or custom existed for years" before Chickis and Campbell collided. Complaint ¶ 15. "Sewer Authority employees, including Campbell himself, had routinely made the illegal left turn on a daily basis for years before [Chickis'] accident." Complaint ¶ 19.

Chickis avers that after his catastrophic accident, on March 28, 2024, two Sewer Authority employees made the same illegal left turn onto Curry Hollow Road. Complaint ¶ 17. There are no averments in the Complaint about whether there were any other accidents relating to the illegal left turn prior to March 13, 2024.

The Complaint asserts claims for negligence against Campbell and the Sewer Authority. The Complaint also asserts a claim against Campbell for violation of Plaintiff's substantive due process right to bodily integrity under the United States Constitution and a *Monell* claim against the Sewer Authority.

## II.    STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the Court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555). Moreover, while this standard "does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The

standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court assumes the well-pleaded facts that are left are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Also, in reviewing a motion to dismiss, "a court may, in addition to the contents of the complaint, consider any attached exhibits and evidence beyond the complaint including public records . . . , documents essential to [plaintiff's] claim which are attached to defendant's motion, and items appearing in the record of the case." *Smith v. Lincoln Ben. Life Co.*, Civ. Action No. 08-01324, 2009 WL 789900, at *5 (W.D. Pa. Mar. 23, 2009) (internal citation and quotation marks omitted), *aff'd*, 395 F. App'x 821 (3d Cir. 2010).

Additionally, in the courts' consideration of whether claims – if they are to be dismissed – will be dismissed with prejudice, Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend should be freely given "when justice so requires." Denial of leave to amend may be appropriate where there is "'undue delay, bad faith, dilatory motive, prejudice, and futility.'" *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

### III.  DISCUSSION

The parties dispute whether *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (involving a high-speed police chase) and *Fagan v. City of Vineland*, 22 F.3d 1283, 1287 (3d Cir. 1994) (automobile attempting to evade police officers crashed into innocent bystander's vehicle) are dispositive of this case. The Court, in its independent research, has found more analogous decisions involving creation of dangerous conditions on particular roadways which are more apt to the outcome of this case. Those cases are outlined herein.

As the starting point for the Court's analysis, a citizen has a substantive due process right to bodily integrity, and the "state-created danger" theory of constitutional liability "embodies the principle that the government has an obligation under the Fourteenth Amendment's Due Process Clause 'to protect individuals against dangers that the government itself creates.'" *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 176 (3d Cir. 2018)). This "state-created danger" theory, however, is fairly narrow. As explained in *Sauers*:

> Establishing a claim under that doctrine requires a plaintiff to plead four elements:
>
> (1) [t]he harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, **as opposed to a member of the public in general**; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* (emphasis added). Chickis must plead and ultimately establish all four of these elements.

The third element, in particular, is designed to narrow the scope of the doctrine. In *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 913 n. 12 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit explained: "Where the state actor has allegedly created a danger towards the public generally, rather than an individual or group of individuals, holding a state actor liable for the injuries of foreseeable plaintiffs would expand the scope of the state-created danger theory beyond its useful and intended limits." The Court concludes that under the facts of this case, as set forth in the Complaint and construed in the light most favorable to Chickis, he cannot meet the third element.[1]

In *Solum v. Yerusalim*, No. CIV. A. 98-4056, 1999 WL 395720, at *1 (E.D. Pa. June 17, 1999), aff'd, 211 F.3d 1262 (3d Cir. 2000), a young woman was killed in a tragic automobile accident while driving south on a divided highway. Another driver, while going north, encountered a vehicle stopped on his side of the road waiting to make a lawful left turn, swerved to avoid the stopped vehicle, traveled over the divider and struck Solum's vehicle. Plaintiff alleged that the state actor defendants knew the road was unsafe because over 1,000 serious injuries had been reported on that stretch of highway, but failed to repair the road. *Id.* The Court traced the development of the "state-created danger" theory, *id.* at *3-4, and then, with respect to the third element, explained that if the state actor "does not have specific knowledge of the particular plaintiff, no relationship imposing liability exists." *Id.* at *5 (citing *Morse*, 132 F.3d at 913). The discrete class "must be distinguishable from the public in general." *Id.* In *Morse*, the Court of Appeals explained that "when the alleged unlawful act is a policy directed at the public at large ... there can be no specific knowledge of the particular plaintiff's condition" and thus the third element

---

[1] The Court also doubts whether Chickis' Complaint meets the second element (*i.e.*, culpability) in the absence of any averments about prior accidents resulting from illegal left turns at that location.

of the [*Mark v. Borough of Hatboro*, 51 F.3d 1137 (3d Cir. 1995)] test is not met." *Morse*, 132 F.3d at 913 n.12 (citation omitted).

In *Solum*, as in this case, the plaintiff asserted that the discrete class was composed of drivers who used the stretch of road where the accident occurred. 1999 WL at 395720 at *5. The Court rejected this argument and reasoned that this definition "contains an unquantifiable and virtually unidentifiable mass of potential plaintiffs." *Id.* The Court held that the plaintiff "fail[ed] to state a cause of action for a 'state-created danger' to discrete members of a class other than the general public." *Id.* On appeal, the Third Circuit affirmed without opinion.

In *Hammon v. Kennett Twp.*, 746 F. App'x 146, 148 (3d Cir. 2018), the plaintiff asserted a state-created danger theory when the police chief had a seizure while driving on duty and crashed into him. The Court rejected that theory and explained:

> The District Court properly determined that Mr. Hammon was not a foreseeable victim. To be a foreseeable victim, a plaintiff must be "part of an identifiable and discrete class of persons subject to the harm the state allegedly has created" and this element is not satisfied "[w]here the state actor creates only a threat to the general population." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 913-14 (3d Cir. 1997). The Hammons argued that because Mr. Hammon was a resident and taxpayer of the township, he was a member of a discrete class of drivers whom McCarthy would encounter while driving his police vehicle. However, we have held that **drivers on a particular road are not identifiable**. *See Stover v. Camp*, 181 F. App'x 305, 308 (3d Cir. 2006); *Solum v. Yerusalim*, No. CIV. A. 98-4056, 1999 WL 395720 (E.D. Pa. June 17, 1999), aff'd 211 F.3d 1262 (3d Cir. 2000). The alleged risk that McCarthy could suffer a seizure was not limited in scope and was directed toward the public in general. For these reasons, Mr. Hammon was not a foreseeable victim.

*Id.* at 149 (emphasis added).

In *Stover v. Camp*, 181 F. App'x 305 (3d Cir. 2006), the plaintiffs suffered serious injuries after being struck by another car going over 100 miles per hour. The state-created danger theory was based on allegations that the township and the named police officers had knowledge of the dangerous conditions at the intersection and knew that the driver of the other car had a reputation

7

for driving at high speeds, but failed to take reasonable and appropriate action to prevent accidents. *Id.* at 307-08.  The Court rejected the claim and explained:

> The Stovers have not alleged facts that demonstrate that they were foreseeable victims of the Township's failure to improve the roads in question or to prevent Charles William Camp from driving recklessly. The complaint shows only that the Township failed to protect the public in general from the type of harm the Stovers suffered. The Stovers argue that they were part of a group of persons who regularly traveled on Atlas–Cherry Valley Road who were subject to a higher risk of injury than the public at large. But this hardly constitutes a "discrete class of persons subjected to the potential harm" that the Stovers suffered. *Id.* We thus agree with the District Court that the Stovers cannot satisfy the third requirement for application of the state-created danger doctrine.

*Id.*

In *Watson v. Methacton Sch. Dist.*, 513 F. Supp. 2d 360, 376–77 (E.D. Pa. 2007), the plaintiff argued that any motorist traveling in the vicinity of the high school in the hours after the prom and after-party was a foreseeable victim of a crash caused by a sleep-deprived attendee.  The Court rejected this class of "all travelers in the vicinity" because it suffered "from the same problems of breadth as the class that was rejected in *Solum*."  *Id.* at 377.

In *Essington v. Monroe Cnty. Transit Auth.*, No. 3:19-CV-01878, 2020 WL 5506436, at *3 (M.D. Pa. Sept. 11, 2020), <u>vacated on other grounds</u>, No. 3:19-CV-01878, 2020 WL 8816361 (M.D. Pa. Sept. 15, 2020) (child killed while crossing the road from a bus stop), the plaintiff argued that he was a member of the discrete class of passengers disembarking from that bus stop.  The Court rejected this argument and explained: "a plaintiff is not part of a discrete class if the risk applies to thousands, or even hundreds of people and **the risk exists for an 'indefinite' duration of time**."  *Id.* (emphasis added) (citations omitted).  The Court commented that the risk which resulted in his unfortunate death "was the same risk faced by countless other passengers [ ] as they disembarked at this and other bus stops over the course of years since service commenced along that route."  *Id.*  Accord *K.W. by & through White v. Se. Pennsylvania Transportation Auth.*, No.

8

Case 2:24-cv-00673-WSH    Document 23    Filed 01/30/25    Page 9 of 12

CV 16-5578, 2018 WL 1583676, at *7 (E.D. Pa. Mar. 30, 2018), aff'd, 760 F. App'x 104 (3d Cir. 2019) (pedestrians killed by bus turning left) (rejecting argument that "because the mirror configuration poses a danger to only a subset of pedestrians, and not to the public at large," that subset qualifies as an "identifiable and discrete" class of persons to support state-created danger claim).

Aside from *Morse*, *Solum*, *Hammon*, *Stover*, *Watson*, and *Essington*, all of which apply the state created danger doctrine narrowly to a discrete class of rather than the general public, the Court has located two nonbinding decisions in its independent research that would appear to support a broader class of "all travelers" on a particular road. Upon closer examination, however, those decisions show why liability is lacking in this case.

In *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993), the Seventh Circuit upheld a state-created danger claim where officers arrested a sober driver but left the car keys with an obviously drunk passenger who subsequently drove and hit the plaintiffs. The rationale for this decision was explained in *Long v. Armstrong Cnty.*, 189 F. Supp. 3d 502 (W.D. Pa. 2016), aff'd sub nom. *Long v. Cnty. of Armstrong*, 679 F. App'x 221 (3d Cir. 2017) (holding that victim of escaped inmate was not member of a discrete class of persons living near the jail):

> As clarified by the Seventh Circuit itself some years later, liability was only allowed in *Reed* because "the plaintiffs were within a small, defined group of potential victims" and "the threat of harm to other motorists was limited in both time and scope." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009) ("The drunk driver [in *Reed*] jeopardized the safety of only those motorists traveling on the same highway, and only for a matter of hours").

*Id.* at 510 n.12. The Court in *Long* commented that if *Reed* was interpreted to recognize state-created harm to "random victims," that would be "at odds with settled Third Circuit law." *Id.*; accord *K.W.*, 2018 WL 1583676 at *7 (distinguishing *Reed* because the threat of harm had a limited range and duration of two hours).

9

In *Van Orden v. Borough of Woodstown*, 5 F. Supp. 3d 676, 679 (D.N.J. 2014), a woman drowned in her car after officials opened floodgates to a dam in anticipation of a hurricane without closing the affected road. The Court acknowledged that the third element of a state-created danger claim was a "difficult question," but held that the plaintiff stated a viable claim. The Court distinguished many of the cases discussed above on the basis that they "all sought to challenge existing conditions of roadways, and thus the claims were unbounded by time, let alone directly connected to a discrete, affirmative act by state actors that had foreseeable victims." *Id.* at 687. Thus, "there was no meaningful way to distinguish the plaintiffs from any member of the public who drove on those roads at any time, on any day, and who experienced the same allegedly dangerous conditions." *Id.* The situation in *Van Orden* was distinguishable:

> Opening of the floodgates did not create an ongoing threat to the general public here in the way the alleged dangers did in *Solum*, *Stover*, and [*Burnette v. City of Philadelphia*, No. CIV.A. 13-0288, 2013 WL 1389753, at *6 (E.D. Pa. Apr. 5, 2013) (rejecting state-created danger claim from motorcyclist/every-day user of road who was injured when bus forced passenger to disembark at area with no crosswalk)] and the area of risk contemplated here is far smaller than that in *Watson*. Unlike *Solum* and *Burnette*, in which the **conditions complained of had existed for months or even years**, Ms. Sylvestri was endangered by a new condition of raging floodwaters created that same night.

*Id.* at 688 (emphasis added). The state-created danger theory was viable in *Van Orden* because the defendants created a dangerous condition on a particular road, for a short window of time, by exposing a discrete class of drivers to a specific danger.

The facts alleged in the Complaint in this case reflect that Chickis is not part of a discrete class. The Complaint alleges that the Sewer Authority had a "long-established policy" of directing or permitting its employees to make the illegal left turn onto Curry Hollow Road, which "existed for years before [the] accident." Complaint ¶ 15. Campbell "routinely made the illegal left turn on a daily basis for years before Plaintiff's accident." Complaint ¶ 19.

10

The danger posed by Defendants' conduct was to the general public and existed for an indefinite period of time. Anyone who drove that road "for years" was potentially subject to the same danger. Because the danger posed to Chickis cannot be distinguished from the danger posed to the public at large, Chickis cannot satisfy the third element of a state-created danger claim. The § 1983 claims against Campbell and the Sewer Authority must be dismissed.

Finally, Rule 15(a)(2) instructs that courts "should freely give leave" to amend. If a complaint in a civil rights case is subject to dismissal, courts in the Third Circuit must grant leave to amend, regardless whether leave was requested, unless doing so would be inequitable or futile. *LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022). In this case, because the facts set forth in the Complaint do not fall within the "state-created danger" theory, amendment would be futile. *See Hammon*, 746 F. App'x at 150 (affirming denial of leave to amend state-created danger claim as futile). The Court, therefore, will deny leave to amend, dismiss the § 1983 claims that were the basis for federal jurisdiction with prejudice, and remand this case forthwith to the state court. *See K.W.*, 2018 WL 1583676 at *16 (dismissing state-created danger claims, declining to exercise supplemental jurisdiction and remanding removed case to state court).

## IV. CONCLUSION

Although the circumstances of this case are tragic, they do not support a federal constitutional claim under the state-created danger theory. For the reasons set forth above, the Motions to Dismiss the Complaint (Docket Nos. 8, 11) will be granted in part; the § 1983 claims against Campbell and the Sewer Authority will be dismissed with prejudice; and the case will be remanded forthwith to the state court.

An appropriate Order follows.

<u>s/ W. Scott Hardy</u><br>
W. Scott Hardy<br>
United States District Judge

Dated: January 30, 2025

cc/ecf: All counsel of record